Good morning, Your Honor. May it please the Court, Counsel. I am Robert Stone. I'm here on behalf of the appellant, Gerardo Mosquera. Mr. Mosquera raises four assignments of care. The first one is whether his right to a speedy trial was violated under either the Speedy Trial Act or under the Sixth Amendment. The statutory analysis under the Speedy Trial Act is different than the Sixth Amendment analysis. The Speedy Trial Act requires trial within 70 days of the indictment or the defendant's first appearance, whichever is later. So the government points to Section 3162A2 that says that the failure of the defendant to move for dismissal is a waiver of the right to dismissal. And so because there wasn't any motion made, the Speedy Trial Act claim is waived. What's your response to that? Well, and I understand that that's the elephant in the room. And, in fact, Mr. Mosquera did not, nor did his trial counsel, file a motion to dismiss. And I tried to address that in my brief and in my reply brief by looking to United States v. Lloyd and United States v. Hall. So in those cases, there was a pro se motion to dismiss, correct? Yes. So there wasn't anything of that nature here? Well, I would point to those cases as a recognition by the Ninth Circuit that where a defendant's counsel does not file a motion to dismiss, the intent and the purpose of the statute is fulfilled if defendant alerts the court to the speedy trial issues. And specifically, if we look at Hall, there's language in Hall where it says Hall's counsel failed to move for dismissal. The failure is not in our dispositive. And then the court lists several different things that Mr. Hall did to alert the court to his speedy trial issue, the last one being he did file a motion. But my reading of Hall tells me that the only reason the court would indicate that there were other things that he did, which was one of them was to file a prosecution of counsel, arguing that his counsel had continued the trial without his agreement. He wrote a letter to the court objecting to the trial continuances. None of those were motions to dismiss. The court in Hall discusses those, I believe, in the context of recognizing that a defendant whose trial counsel does not move for dismissal can alert the court in some other way. But without a motion to dismiss, it would be contrary to the plain language of that portion of the statute. That's my concern. There's really no way to get around that, is there? Well, only by what I'm trying to argue here with regard to what I think Hall says, that the purpose and intent of the statute is fulfilled by a defendant alerting the court whether or not a motion is filed or not. I understand. I fully understand the language of the statute. But again, if we look to the cases, I think that there's a recognition that a defendant whose trial counsel doesn't file on his behalf has some obligation to alert the court and that that needs to be done. But what we see in Hall is a list of different things that at least the court in Hall, I believe, thought would have been sufficient to alert the court, one of which was filing something other than a motion to dismiss. So that's the argument that I have with regard to the motion to dismiss. I would say that irregardless of whether Mr. Mosquera filed his own motion to dismiss, the statute requires, and this trial court did, make a determination that the ends of justice were best served by the delay. And the court did this twice, first in the initial motion to continue that was filed February 7th by trial counsel and in which and about which Mr. Mosquera did not object, and on April 27th, when trial counsel orally at the status hearing asked first for 30 days and then for 60 days, to which Mr. Mosquera did object. But then he consented. The government also points to the April 27th, 2012, STAS conference as Mr. Mosquera waiving the Speedy Trial Act rights because he ultimately consented to the delay. Well, he did ultimately agree, and I've included in my brief why I think that that agreement wasn't knowing and voluntary based upon a colloquy that the court engaged him in, which was to basically tell him that this judge had seen this many times before and if Mr. Mosquera didn't agree to the continuance, he was going to be convicted and sentenced for 97 months. So based upon that, Mr. Mosquera did agree. But my other point is that irregardless of whether he waived his right or agreed to the continuance, the court is still required, in order to delay the trial based upon an ends of justice determination under subsection 7, the court is still required to make specific and detailed findings that would support that determination based upon the items that are listed in subsection 7, which is adequate time to prepare, continuity of counsel, and complexity of the case. And I would say, looking at the record here, I don't believe the court made sufficient findings. The court made a passing reference to the complexity of the case, but didn't explain how the case was complex. There was only one defendant. There were only three counts. The court made a passing reference to adequate time to prepare for counsel. But counsel said he needed a continuance, right? I thought there were like 40,000 pages of discovery. I think there were 1,800 pages of discovery and some boxes of records that were addressed in at the status hearing by the government. But the court, as I said, I believe, if you look at the record, made a passing reference to complexity, but didn't explain how it was complex, didn't explain why trial counsel, having already gotten one continuance, needed more time, another three months from the original trial date, wasn't adequate time to prepare. And even if we find that the court did make adequate findings with regard to the April 27th continuance, I would submit that that only goes to the 60 days that trial counsel asked for. Anything over that, which was 52 days, can't be excluded because trial counsel only asked for 60 days. So he's telling the court that 60 days is adequate time for him to prepare. The court continued that for another 52 days, over and above that 60 days, based upon the court's calendar, which is prohibited, it's restricted under subsection C, the court ---- Rebuttally, at the April 27th hearing, he agreed to the continuance. And again, my argument is that that's based upon the colloquy that the court engaged him in, basically saying what I had just argued. So I see I have a little bit less than two minutes. I'd like to reserve that for rebuttal. All right. May it please the Court. Good morning. Helen Cooper on behalf of the United States. The Speedy Trial Act cases relied on by the defendant are distinguishable from the present case. As the courts noted, the defendant did consent to the September 4th trial date. The defendant did not just consent to 30 or 60 or 90 days. He specifically consented to the September 4th trial date. Well, what's your response? His argument is that that waiver was sort of coerced. It was not knowingly involuntary, because, in effect, the district ---- the judge, by his comments, you know, sort of twisted the defendant's arm. Isn't that his argument? That is his argument. And the defendant's arm was not twisted. The court did not state you will get 97 months in prison if you don't consent to this setover. The judge correctly described for the defendant what he was looking at by way of sentencing guidelines. And, in fact, as it turned out, the government was seeking a substantial sentence, I think, even more than 97 months by the time he was sentenced. The court also correctly pointed out that the case was complex. I will state that the complex case designation was not objected to by the defendant. The discovery was voluminous. There were multiple witnesses. The nature of the fraud charge in and of itself was fairly complex with the voluminous records. So there wasn't any kind of arm twisting. The defendant was provided an opportunity to voice what his frustrations were with the trial date or with setting over the trial date, and the court took those into consideration. And I will state that the defendant expressing he wasn't sure if he wanted to waive his Speedy Trial Act rights is very different than moving to dismiss because of Speedy Trial Act violation. How long did the trial take? I believe it was two days, Your Honor, including Vordeer. Perhaps two days. You can make a strong argument that any case that can be tried to during two days can't be too complex, can't you? Well, I think there's a difference between how the case ends up trying and the investigation that needs to happen before that. Certainly, a defense attorney is required to do his due diligence to determine what will happen. The question is whether, you know, it's a fair thing to do to declare this a complex case in the Speedy Trial Act. I mean, if you can declare a two-day jury trial complex in the Speedy Trial Act, you can declare any case a complex case. I mean, that's, you know, a pretty low hurdle, isn't it, to declare a case complex? I don't think the amount of time that the case takes. Well, would there ever be a case that's not complex? Yes, there would be cases that would not be complex, that might take a week or two or three days. Well, and this only took two days. It did, Your Honor, and a lot of that. And again, the record wasn't developed on that issue because there was no objection to the complex case designation. But in this particular case, there were voluminous records that were summarized and provided to the jury by way of summary exhibits, and that saved a lot of time. And then the defense ultimately chose to not put on any witnesses themselves. Does the complexity issue, I mean, assuming, does the complexity issue go to, based on the assumption that the Speedy Trial Act claim was not waived, or does that go to the Sixth Amendment claim of the Speedy Trial Acts being waived? In other words, the district court obtained Mr. Mascara's consent, saying it's unfair for you to go to jail just because your attorney isn't ready. And I guess Mr. Mascara saw the wisdom of that. But I guess the district court's evaluation of the complexity of the case, what point does that go to? Well, because the defendant consented to the trial date, he waived his Speedy Trial Act rights. If the defendant had not consented, if he had insisted that he wanted a trial date sooner than September 4th, then I think the court's designation of the case is complex. But the court never took that step because Mr. Mascara consented or, and now we're looking at waiver under 316282, isn't that right? That's correct, Your Honor. So it's an alternative argument. I guess if the court were to find that somehow his arm was twisted and he really did not waive his Speedy Trial Act rights, ultimately the court could have set the case for September 4th anyway based on that designation, which was not objected to. But your primary issue on both the Speedy Trial Act and the Sixth Amendment Speedy Trial claims is that they're both waived, right? Correct. And I'll say, Your Honor, that there's just an inherent unfairness in these proceedings when the defense is making, they're using terms like government negligence and saying things that the government did or did not do that affected the Speedy trial. And that record wasn't developed at the trial court level because it wasn't raised. And, of course, the whole point of properly preserving an issue, of making a proper objection or a motion, is so the record can be developed and the problem, if there is one, can be brought to the trial court's attention, and the trial court can then have the opportunity to fix it. And that simply wasn't done here. I want to ask you, you have a few minutes left, about an issue that Mr. Stone didn't reach because probably we didn't give him time. But that issue he raises that district court aired and not, well, Mosquera raised He asked for a downward departure on the basis of the severe conditions of confinement, right, while he was in Columbia. And the claim is that, well, it was error to deny that. But as far as I can see from the record, the district court never really considered that request for departure, did it? That's not true. The district court did consider that argument. If the So, first of all, at the beginning of the defense attorney's arguments on that issue, the defense attorney had, based on the government's sentencing presentation and the explanation to the court, that, yes, the defendant is going to get credit for that time the bureau was in. Well, that's a different issue. In other words, you know, does he get credit for pretrial detention? I mean, that's, you know, a day for day credit. That's an entirely different argument than a downward departure because of the severe conditions of confinement. It's a different ground and a different issue. And that issue was never considered. The issue of departure, Your Honor. Yes. Okay. There is something. Is there any departure? Departure being part of the guidelines. There's no departure that's Is there a departure provision in the guidelines addressed to harsh conditions? I'm not aware of one in the guidelines, Your Honor, but I believe defense counsel provided a case where it had been granted in a prior case. So is this a 3553A factor? It's not a guidelines factor, is it? Well, the Second Circuit, though, treated it as a departure, right? I believe that that was what the case was that the defendant presented. And that was the issue the district court never really considered, didn't rule on it. In the court's sentencing findings as to why he was choosing the sentence between the guideline range of 51 and 63 months, the court specifically listed numerous aggravating factors and one mitigating factor. And that one mitigating factor was the time spent in Columbia incarcerated. And if I can go back to at the beginning of the defense argument, the defense realized he was going to get that credit by the Bureau of Prisons. So basically, that was one of the reasons why the defendant was making that argument and then said, okay, in light of the fact that he will get that nine months credit, we also want the court to give him more credit. And in the court's findings, by listing numerous aggravating factors and specifically stating only one mitigating factor, the court did consider it in sentencing the defendant to. Well, you're saying if we search, you know, hard and long, we might find some ground justifying. But doesn't the court, you know, when the defendant asks for a downward departure, doesn't the court have the obligation to consider that and say either I'm going to grant it or I'm going to deny it because and give a reason? And the court never did that here. It never said I'm going to deny your request for a downward departure. I don't think that's what the case law says. I think Trujillo says if this court is going to give an upward departure and not consider grounds for something below an upward departure, that then the court really should give some specific explanation. The Trujillo case that the defense cited dealt with a 360-month sentence that eventually became an upward departure sentence. And that case also specifically stated that when a person gets a guideline sentence, that the court really doesn't have to say that much more at all. Yeah, but there, a downward departure request was not an issue, so obviously the case is not going to discuss what you should do when such a request is made, right, in Trujillo? In Trujillo, the district court there didn't mention anything about the defendant's characteristics, and that's very different here. The court specifically mentioned the Colombian incarceration and defendant's characteristics. But, yeah, I know that. But all that's considered in the regular sentencing context and about, you know, the Colombian confinement, what he came down and says, well, that's a bureau of prison's issue, right? It's how much credit you get. So he didn't really address that. And I'm not really inquiring about that. That's probably correct. I'm just inquiring about the failure to address directly and specifically the request for a downward departure. I don't think that the court has to use the words downward departure in his explanation in order for it to be clear that he's considered the downward departure. He specifically stated, I'm considering the Colombian incarceration in factoring in the sentence, and in my mind gave him three months' credit for it. That was the only reason why to not give the high-end sentence of 63 months. All right. Thank you. Thank you. Thank you. Just three things that I'd like to quickly go through. First of all, I think the Guidelines sentence is only reasonable if the Guidelines calculation is correct. So in this case, we've argued that the Guidelines calculation is not correct. Why is the Guidelines calculation not correct? Well, a departure for harsh conditions would be one thing. Well, there's no departure in the Guidelines. I know sometimes we use the word departure to talk about variances or adjustments. But you didn't point in your briefs to any provision in the Guidelines that are departures. And we, the Ninth Circuit, do not review district court decisions about departures. That's in our case law, Mohamed, and other cases. So you're really talking about a downward adjustment. I mean, there's nothing wrong with the Guidelines calculations that you've pointed to. Well, I believe it can always fall under 5K2.0, which would be extraordinary conditions, but not otherwise considered in the Guidelines. So I think it could be. So your argument is under 5K2.0, extraordinary circumstances? Something that's not adequately considered by the Guidelines. And you're saying that's a departure? A departure specification? Because the Ninth Circuit doesn't review departures. We have case law at that point. I'm sorry? We have case law saying that we don't review a district court's departure determination. We only review their 3553A analysis. Well, this Court does review the Guideline calculations to ensure that it's correct. Correct, but not departures. I know, because I authored an opinion confirming that. So just to move on, I think a Guidelines, well, as Your Honor has pointed out, I believe that once Mr. Mosquero makes a request for a departure based upon harsh conditions, the Court is required to consider a rule and to provide an explanation, and I don't believe the Court did that. My primary point, hopefully, is that when we talk about consent on Mr. Mosquero's waiver of his right to speedy trials, even if the Court finds that he did that, I don't think that's enough under the statute. Where the Court delays the trial based upon an ends of justice determination, it's required to make specific findings, and in this case, I don't think the Court made sufficient specific findings for the 112-day delay from April 27th to September 4th. Even if those findings were adequate, I would again argue that they only apply to the 60 days that Mr. Barker, the trial counsel, asked for. That leaves us 52 days that still can't be excluded under the Act. When we add that 52 days to the 50 days between his arraignment date and the first motion to continue from December 19th to February 7th, we have 102 days that are not excluded under the Act, and I will say that trial counsel filed a motion to dismiss count three on July 23rd that was ruled on August 21st, so that's a pending motion. If we exclude that time, that's another 29 days. And if my math is correct, we're still at 73 days. So anything over 70 days, the statute requires dismissal, and then the issue is whether it's dismissal with prejudice or without. And I'm way over. Thank you. Well, it's my fault. The case of Mosquera, United States v. Mosquera, is submitted.
judges: Alarcon, Tashima, Ikuta